IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DIANA LYNN STONE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-14-612-STE |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed the administrative record (hereinafter TR. ____). Both parties to the proceedings have consented to the exercise of jurisdiction by a United States Magistrate Judge to order the entry of judgment. (ECF No. 12). Upon review of the pleadings, the record, and the parties' briefs, it is the opinion of this court that the Commissioner's decision must be **AFFIRMED**.

### I. Procedural Background

Plaintiff's application for benefits was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 16-23). The Appeals Council denied Plaintiff's request for review, thus the ALJ's decision became the final decision of the Commissioner. This judicial appeal followed.

## II. The Administrative Decision

The Commissioner followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since November 28, 2011, the application date. (TR. 18). At step two, the ALJ determined Plaintiff has the following severe impairments: diabetes mellitus, hypothyroidism, and chronic pancreatitis. (TR. 18). At step three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 18).

At step four, the ALJ found Plaintiff can perform less than the full range of light work as she is limited to simple tasks with routine supervision. (TR. 18). Based on this, the ALJ found Plaintiff retained the residual functional capacity (RFC) to perform her past relevant work as a fast food worker and a house cleaner. (TR. 23). Accordingly, Plaintiff was found to be not disabled. (TR. 23).

## III. Issues Presented

Plaintiff raises four primary issues on appeal. Plaintiff first contends the ALJ erred at step two of the sequential evaluation process by failing to properly consider whether her additional impairments were severe. In the second and third issues raised on appeal, Plaintiff argues the ALJ erred at step four in determining and applying her RFC. Finally, Plaintiff alleges that the ALJ erred in his credibility analysis.

### IV. Standard of Review

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

### V. Analysis

#### A. Step Two Determination

In connection with her first claim on appeal, Plaintiff argues the ALJ erroneously failed at step two to discuss diabetic neuropathy, osteoarthritis, encephalopathy, depression and memory loss as either severe or nonsevere impairments. (ECF No. 14:10-11). Explaining that she is held to only a *de minimus* burden to demonstrate an impairment is severe, she points to various entries in her medical records and/or testimony which allegedly support the existence of these conditions.

However, the ALJ found Plaintiff has at least one severe impairment, and that "was all the ALJ was required to do in that regard." *Oldham v. Astrue*, 509 F.3d 1254, 1256–1257 (10th Cir. 2007). That is, "once an ALJ finds that a claimant has at least one severe impairment, he does not err in failing to designate other disorders as severe at step two, because at later steps the agency 'will consider the combined effect of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.'" *Barrett v. Astrue*, 340 F. App'x 481, 484

3

(10th Cir. 2009) (quoting 20 C.F.R. § 404.1523). Consequently, the undersigned "can easily dispose of" Plaintiff's step-two challenge. *Oldham*, 509 F.3d at 1256; *see also Brescia v. Astrue*, 287 F. App'x 626, 629 (10th Cir. 2008) ("Once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another disorder as 'severe' at step two does not constitute reversible error...."); *Jordan v. Astrue*, No. CIV–08–611–R, 2009 WL 1060417, at *1 (W.D. Okla. April 20, 2009) ("[B]ecause the ALJ found at step two that Plaintiff had severe impairments ..., it is unnecessary to decide whether the ALJ should have found that Plaintiff had a severe medically determinable [mental] impairment at step two because any error in that regard would be harmless."). Thus, the undersigned finds no error a step two.

### B. RFC Determination

#### 1. Vagueness

The ALJ determined that Plaintiff "has the residual functional capacity to perform less than a full range of light work as defined in 20 C.F.R. 416.967(b). [Plaintiff] can perform simple tasks with routine supervision." (TR. 18). Plaintiff's first challenge to the ALJ's determined RFC is that it is too vague. In making this argument, Plaintiff quotes only the first sentence of the RFC regarding the "less than full range of light work," and then states that the ALJ fails to indicate what other limitations would keep her from performing the full range of light work. (ECF No. 14:12).

This argument is without merit as the ALJ specifically stated that Plaintiff is limited to "simple tasks with routine supervision." (TR. 22). As the Commissioner points

out, Social Security guidelines and regulations make it clear that the ALJ's RFC determination dictate Plaintiff can perform light, unskilled work. *See* 20 C.F.R. § 416.968(a) (defining unskilled word as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."); SSR 85-15, 1985 WL 56857, at *4 ("unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting). This is further illustrated by the ALJ's finding that Plaintiff can perform her past relevant work of fast food worker and house cleaner, both of which are classified as light and unskilled, but not her past relevant work as sales clerk, which is light and semiskilled. (TR. 23).

If Plaintiff is arguing that the ALJ is required to set forth a function-by-function analysis in presenting his RFC determination, that contention is equally without merit. In *Hendron v. Colvin*, 767 F.3d 951 (10th Cir. 2014), the ALJ found that the plaintiff had the RFC to perform a full range of sedentary work. *Id.* at 956. The plaintiff argued that the RFC was "not in the proper form" because "the ALJ was required to separately discuss and make findings regarding her abilities to sit, stand, walk, lift, carry, push, or pull." *Id.* While sedentary work generally involves about six hours of sitting, the plaintiff had presented evidence that she could sit for only one half hour at a time. *Id.* at 957. Based on this, the plaintiff "assert[ed] that, in assessing her RFC without an explicit function-by-function analysis, the ALJ overlooked her problems with sitting." *Id.* at 956.

The court disagreed, reasoning that the ALJ considered the plaintiff's evidence but decided it did not support her alleged limitation. *Id.* at 957. Concluding that "the ALJ's failure to find explicitly that [the claimant] was capable of sitting for six hours during a regular eight-hour work day was not critical to the outcome of the case," the court held that the plaintiff had not demonstrated error. *Id.* (citing *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense.... [W]e cannot insist on technical perfection.")). The ALJ's reasoning is clear and therefore, the Court does not find error in the ALJ's RFC determination or form.

### 2. Other Impairments/Limitations

Plaintiff also argues that the ALJ failed to consider Plaintiff's diabetic neuropathy and its "affect on her ability to grasp, handle or finger" with her hands. (ECF No. 14:12). The Commissioner responds that the ALJ's finding that Plaintiff's diabetes was severe "reasonably subsumed all of her diabetes-related symptoms, including her alleged neuropathy." (ECF No. 15:9). While the Court is skeptical of whether physical limitations are inherently subsumed within recognized impairments, the fact remains that the ALJ specifically considered Plaintiff's physical symptoms related to her hands. The ALJ noted Plaintiff's April 19, 2012 examination in which Dr. Pitman stated that Plaintiff's "grip strength was 5/5 bilaterally .... [And Plaintiff] could effectively oppose

the thumb to the fingertips, could manipulate small objects, and could effectively grasp tools such as a hammer." (TR. 19). Though the record includes notations wherein Plaintiff complains to her physician that her hands are sore and/or weak, nowhere in the record do any medical personnel indicate that Plaintiff suffers from any limitations in her hands. Indeed, two different consulting physicians note that Plaintiff has 5/5 grip strength and normal range of motion in her extremities, including her thumbs and fingers. (TR. 400, 402, 405, 420).

Plaintiff also contends the ALJ erred by failing to "indicate whether her memory loss or depression would cause any additional non-exertional mental limitations." (ECF No. 14:13). However, in making this argument, Plaintiff makes no attempt to identify any mental functional limitations caused by her alleged depression and/or how such limitations would impede her ability to work and has therefore "shown no error." *McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (agreeing that the plaintiff failed to show any error in the RFC assessment where she failed to identify any additional limitations that should have been included); *Haynes v. Astrue*, No. CIV-07-1201-HE, 2008 WL 294935, at *1-2 (W.D. Okla. July 24, 2008) (adopting magistrate judge's recommendation that the district court reject the plaintiff's argument relating to the RFC assessment where plaintiff "has not identified any functional limitations caused by the alleged impairments which would impede her ability to work").

Plaintiff does generally point to her Global Assessment of Functioning ("GAF") score of 35 to argue that her depression is a severe impairment. (ECF No. 14:11).

7

However, in doing so, Plaintiff takes her GAF score out of the context in which it is included in the record. The GAF is a scale utilized by clinicians to reflect overall level of functioning. *See* American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 324th ed., Text Revision, 2000) (DSM–IV–TR). The Tenth Circuit has noted that "a GAF score of 31–40 indicates '[s]ome impairment in reality testing or communication ... OR major impairment in several areas, such as work, school, family relations, judgment, thinking or mood.'" *Cainglit v. Barnhart,* 85 F. App'x 71, 75 (10th Cir. 2003) (quoting DSM–IV–TR at 34). However, a GAF score without narrative explanation does not establish the existence of an impairment seriously interfering with a claimant's ability to work.

GAF scores "must be considered with the rest of the record," and such scores alone do not establish inability to work. *Butler v. Astrue*, 412 F. App'x 144, 147 (10th Cir. 2011); *see also Petree v. Astrue*, 260 F. App'x 33, 42 (10th Cir. 2007) ("A low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record."); *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (noting that a claimant's impairment reflected in a low GAF score "might lie solely within the social, rather than the occupational sphere"); *Camp v. Barnhart*, No. 03–7132, 2004 WL 1465777, at *1 (10th Cir. June 30, 2004) (a GAF score of 50 "without evidence that it impaired [claimant's] ability to work, does not establish an impairment."); *White v. Astrue*, No. CIV–09–472–M, 2010 WL 56151, at *5 n.6 (W.D. Okla. Jan. 6, 2010) ("[A] GAF assessment cannot establish an impairment absent evidence that the score was

8

related to a claimant's ability to work as compared to some other factor or factors in the claimant's life.").

Here, Dr. Jerry White, a psychologist, performed a one-time examination on Plaintiff on request from the Oklahoma Department of Rehabilitation Services ("ODRS"). (TR. 494). He noted that upon questioning, Plaintiff informed him that she had difficulty maintaining a job most of her life due to her drug and alcohol addiction. (TR. 494, 497). He conducted IQ tests and Plaintiff scored in the average range of intellectual functioning. (TR. 495, 497). He noted that based on her scores, Plaintiff would likely prefer concrete tasks rather than tasks that require abstract verbal reasoning. (TR. 495). Further tests revealed that Plaintiff's academic skills are commensurate with her general intellectual ability. (TR. 496-97). Dr. White discussed Plaintiff's history of drug and alcohol addiction and noted that her current state of abstinence from such use is "very short given her lengthy history of dependence." (TR. 497). He specifically stated that her GAF score of 35 was related to her overall functioning during the "past year." (TR. 497).

The ALJ did not ignore the assigned GAF score in his decision. He specifically noted that Dr. White assigned a GAF score of 35. (TR. 20). However, in accordance with Tenth Circuit law and the notes of Dr. White, the ALJ further explained that a GAF score is merely a "snapshot of the claimant's functioning at the particular time the score is obtained" and "does not necessarily have a longitudinal meaning." (TR. 21). The ALJ

9

concluded that Plaintiff's impairments, "although limiting, do not support a conclusion that [Plaintiff] is unable to engage in *all* work activity." (TR. 21) (emphasis in original).

Plaintiff does not direct the Court to any statement by any clinician, including Dr. White, that the GAF assessment was related to Plaintiff's ability to work as compared to some other factor or factors in her life. Indeed, Dr. White specifically stated that the score was related only to the prior year and in light of Plaintiff's scores on the other tests, does not by itself support a conclusion that the GAF score is specifically related to Plaintiff's ability to work. (TR. 497). It is apparent from the ALJ's decision that he considered the GAF score in the context it was assigned and in the context of the record as a whole. *See Petree*, 260 F. App'x at 42. Thus, standing alone, Plaintiff's one-time GAF rating of 35 does not mandate a conclusion that the ALJ erred by failing to give controlling weight to Plaintiff's score or find a limitation based on the same.

With regard to Plaintiff's alleged memory loss, she again fails to cite to any evidence in the record that supports a limitation related thereto. The only reference in the record is found in notes from two different doctor appointments where Plaintiff reported that she was "forgetting lots of things," for example, leaving stove burners on, missing appointments and forgetting to take medication. (TR. 466, 460). Following these reports, she underwent an MRI but the results showed only "[m]ild nonspecific T2 white matter foci, most likely early microangiopathy," and no acute pathology or restricted blood flow was noted. (TR. 456).

It is significant to note that by restricting Plaintiff's range of light work to only

simple tasks with routine supervision, the ALJ's RFC is actually more restrictive than any findings of the consulting physician, Dr. Pitman, and the three reviewing physicians would support. (TR. 397, 400-18, 420). The RFC is supported by substantial evidence and Plaintiff's challenges are mostly to form rather than substance. Plaintiff has wholly failed to identify limitations, if any exist, that would prevent her from performing the past relevant work indicated and it is not the function of the ALJ or this Court to do it for her. Thus, the undersigned finds no error in the Commissioner's step-four RFC determination.

### 3. Vocational Expert Testimony

In Plaintiff's next basis for challenging the ALJ's RFC, she appears to argue that the hypothetical posed to the vocational expert (VE) did not match the ALJ's final RFC determination. During the administrative hearing, the ALJ solicited testimony from a VE who testified that Plaintiff's past relevant work was adequately set forth in the record and he further described each of Plaintiff's previous jobs and their exertional level. (TR. 37-38, 51-52). The VE explained that Plaintiff's past relevant work as warehouse worker and bakery worker are classified as medium level with an SVP of 2, fast food worker and house cleaner as light level with an SVP level of 2 and sales clerk as light level with an SVP of 3. (TR. 51). The ALJ incorporated each of these descriptions in his decision, noting that only the jobs of fast food worker and house cleaner qualify as unskilled light work. (TR. 23).

11

The ALJ posed a hypothetical to the VE regarding whether an individual who could perform at the light exertional level but must be allowed to change positions between sitting, standing and walking at will, can perform simple tasks but requires continuous supervision and needs four or more unscheduled breaks per day would be able to perform any of Plaintiff's past work. (TR. 52-53). The VE responded that a claimant under those limitations would not be able to perform the Plaintiff's past relevant work or any other jobs in the national economy. (TR. 53-54). As can be seen, the ALJ's hypothetical actually asked the VE to assume that Plaintiff had more limitations than the ALJ ultimately found she had. (TR. 18). Plaintiff argues that this was the only hypothetical posed to the VE prior to the ALJ's RFC determination. (ECF No. 14:14).

Plaintiff's argument misconstrues the purpose of a hypothetical in the context of an ALJ's disability determination. The rule is well-settled that where a hypothetical question fails to include all impairments borne out by the evidentiary record, *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995), a VE's testimony in response to it cannot provide substantial evidence to support an ALJ's findings regarding the work a claimant is able to perform. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (holding "hypothetical questions in this context must reflect with precision all of [claimant's] impairments"). But here, Plaintiff does not contend that the ALJ improperly relied on the VE's responses in concluding that she can perform her past relevant work. Her contention is instead still focused on the validity of the ALJ's RFC determination.

An ALJ may pose one or more questions, asking the VE to assume a hypothetical individual with specified limitations that the ALJ may or may not ultimately determine to be applicable to the claimant. An ALJ is not bound by the VE's testimony in response to a hypothetical that fails to set forth only those impairments the ALJ has accepted as true. *See Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990) ("[T]he hypothetical posed to the vocational expert did not set forth only impairments which had been accepted as true by the ALJ. Therefore, his opinion was not binding on the ALJ."). By posing a particular hypothetical, an ALJ does not confine himself to making an RFC determination mirroring the hypothetical limitations.

Moreover, an ALJ's failure to mirror a claimant's RFC limitations in a hypothetical would only call into question the evidentiary support for the ALJ's findings regarding the jobs a claimant is capable of doing, *see Decker*, 86 F.3d at 955, rather than the ALJ's RFC determination. Indeed, VE testimony has no bearing on the RFC determination, which must be based on substantial evidence regarding the nature and extent of the claimant's limitations as a result of her impairments. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The Court has already rejected Plaintiff's contention that the RFC is too vague and/or should have included additional limitations, and the VE's testimony has no bearing on that analysis. Accordingly, the Court finds no error.

### C. Credibility Analysis

Plaintiff's final challenge to the ALJ's decision is based on her argument that the ALJ erred in his credibility analysis. "Credibility determinations are peculiarly the

13

province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks omitted). An ALJ's adverse credibility finding "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotations omitted). Here, the ALJ listed six specific reasons why he found Plaintiff's "statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible," including

> 1. The record indicates that [Plaintiff] is not medication compliant with her diabetic regime;
>
> 2. Dr. Pitman found the following: Her lungs were clear to auscultation bilaterally; her extremities showed no clubbing, cyanosis, or edema; she had no muscle spasms; her grip strength was 5/5 bilaterally; her gait was normal at an adequate speed, was safe, and stable, and with no need for assistive devices; she did not need assistance getting on and off the examination table; her joint examination was unremarkable; she had no neurological defects; she had normal speech and thought processes; she had no perceptual abnormalities; she had normal sensation and cognition; she had good judgment and insight;
>
> 3. X-rays of [Plaintiff's] lumbar spine were unremarkable;
>
> 4. [Plaintiff's] admission to the hospital in October 2012, was due to weakness associated with hypotension and not due to diabetes mellitus, hypothyroidism [or] pancreatitis;
>
> 5. Dr. White found that the [Plaintiff] function[s] in the average range of intelligence; and
>
> 6. [Plaintiff] sought professional help in finding employment during the time which she also sought Social Security disability benefits.

> Additionally, there is no indication that [Plaintiff] experiences side effects of medication that significantly diminishes her residual functional capacity. The [Plaintiff] does experience some pain and discomfort; however, the Administrative Law Judge is not persuaded that her pain and discomfort rises to a disabling level of severity, duration and intensity as [Plaintiff] alleges. (SSR 96-7p).

(TR. 22-23). Plaintiff only takes specific issue with the sixth reason listed and states that it is "not clear regarding why this would detract from [her] credibility." (ECF No. 14:15).

While Plaintiff claims the ALJ's reasoning is unclear, the decision provides further elaboration on why Plaintiff's request for professional help in gaining employment diminished her credibility. After noting that ODRS's records cover the period from January 10, 2011 through April 4, 2013, the ALJ stated the following:

> The focus of the assistance given by the Oklahoma [Department of] Rehabilitation Services is in helping the claimant obtain employment. A note at page 36 appears to be a statement of a goal developed by or for the claimant, and states the following:
>
>> My vehicle repair in order to provide transportation in seeking, obtaining, and maintaining employment will be provided in accordance with DRS policy with verification of title and/or registration to vehicle, a letter of from the owner of the automobile with specific permission for me to drive this vehicle for work, and Oklahoma valid driver's license with three estimates from licensed mechanics and a provided receipt after repairs complete to my VR counselor.
>
> These records show an Individualized Plan for Employment (page 36), and indicate that the claimant was seeking employment, and holding herself out for employment, and sought and obtained professional assistance in seeking

15

> employment at the same time that she sought social security
> benefits on the basis of a claim that she is unable to engage
> in employment.

(TR. 21).

The Tenth Circuit has ruled that a claimant seeking work while claiming to be disabled is a legitimate ground for discounting her credibility. *Mendez v. Colvin*, 588 F. App'x 776, 779 (10th Cir. 2014) (citing *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013) (observing that claimant's interest in returning to work supported adverse credibility finding)). *See also Compton v. Colvin*, No. 14–4024–SAC, 2015 WL 3449892, at *4 (D. Kan. May 29, 2015) (affirming the ALJ's credibility analysis where he relied on, *inter alia*, the inconsistency between the plaintiff's statement in an examination that she "wants a job" and her claim of being unable to work); *Zaloudek v. Colvin*, No. 13–4128–SAC, 2015 WL 1304501, at *5 (D. Kan. March 23, 2015) ("[O]ne's stated interest in returning to work is a valid factor in the ALJ's credibility determination). Thus, this evidence is relevant to Plaintiff's credibility and the ALJ thoroughly explained why Plaintiff's particular attempts to obtain employment affected her credibility.

Though not directly related to the above issue, Plaintiff also characterizes her employment search as a "failed attempt" and that "she was unable to procure any long term full time work through this process." (ECF No. 14:15). However, this is not an entirely accurate description. 20 C.F.R. § 404.1574(a)(1) provides, "We generally consider work that you are forced to stop or to reduce below the substantial gainful activity level after a short time because of your impairment to be an unsuccessful work

16

attempt." There is evidence in the record that Plaintiff's work attempts were not unsuccessful due to her impairments. Plaintiff was hired by Taco Bell on March 26, 2012 and ODRS provided Plaintiff with $50.00 to cover transportation costs (*via* trolley) for her first two weeks of employment until she received her first paycheck. (TR. 586, 591). According to ODRS records, Taco Bell reported that Plaintiff was terminated within one week of her employment, not because she was unable to perform the work but because they suspected her of stealing from her cash register. (TR. 587-88). Plaintiff did not report her termination to ODRS and it was over two months before the termination was instead reported to ODRS by Taco Bell. (TR. 587-88). At the administrative hearing, Plaintiff testified that she was terminated on her third day of employment after her drawer was short $20.00, though she stated that it was because she could not keep up with the rushes. (TR. 38-39).

Though the ALJ did not directly include these particular events in his decision, the Tenth Circuit has noted that they are relevant for consideration. *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002) (affirming ALJ's credibility analysis where he considered that the plaintiff continued working after alleged onset of disability and was fired for reasons unrelated to his impairment); *Potter v. Sec'y of Health & Human Srvcs.,* 905 F.2d 1346, 1349 (10th Cir. 1990) (finding ALJ properly considered "claimant readily admits she did not leave employment as a result of any health-related impairment" in credibility analysis). In any event, contrary to Plaintiff's contention, in

17

reading the decision as a whole, the Court finds that the ALJ's credibility analysis is well supported and "affirmatively linked to substantial evidence." *Wilson*, 602 F.3d at 1144.

### **ORDER**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge Orders that the decision of the Commissioner be **AFFIRMED.**

**ENTERED** on September 8, 2015.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE